Argued and submitted April 4, reversed and remanded October 29, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER NEAL JACKSON,
*Defendant-Appellant.*

Lincoln County Circuit Court
044975; A129271

196 P3d 559

David J. Celuch argued the cause and filed the brief for appellant.

Michael R. Washington, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Defendant was convicted of three counts of theft in the third degree, ORS 164.043, and four counts of falsifying business records, ORS 165.080. He argues on appeal that the trial court erred in denying his motion to compel three witnesses to produce at trial handwriting exemplars for analysis by an expert witness. On review for errors of law, we conclude that defendant was entitled to obtain the exemplars and, thus, we reverse and remand.

The material facts are not in dispute. Defendant worked for a retail company as the manager of its store in Newport. The company's compensation package for management employees included commissions based on their store's sales. Defendant was accused of wrongfully boosting his commissions by entering fictitious sales into the company's computer, thereby creating the appearance that the store's sales were higher than they actually were. Over the course of five months, defendant allegedly entered more than $160,000 in fictitious sales to the Lincoln City Police Department, the Newport Police Department, the Coast Guard, and the Oregon Department of Fish and Wildlife. Packing slips for the fictitious sales stated the names of individuals purportedly from those agencies to whom the sales were supposedly made. Six of the packing slips also bore signatures of the named individuals purporting to indicate that they had received the purchased items. The company's auditor discovered that none of the agencies named on the packing slips actually had any employees with the listed names. The agencies also denied having purchased any of the listed items. The auditor contacted the police, and an investigation ensued. The police concluded that defendant had concocted the sales and that the individuals listed on the packing slips did not exist. The company fired defendant, and, based on the fictitious sales, he was charged with three counts of first-degree theft and four counts of falsifying business records.[1]

As part of his defense, defendant sought to show that someone else in the company had created the fictitious sales

---

[1] Defendant was also charged with theft of a generator, for which the jury acquitted him. That charge is not pertinent to this appeal.

and signed the packing slips. Both the state and defendant subpoenaed the company's district manager, the assistant manager of the Newport store, and the man who became the manager of the store after defendant was fired, who had previously managed another store but had occasionally visited the one in Newport. Before trial, defendant filed a motion under ORS 136.580(2)[2] to compel those prospective witnesses to produce, in advance of trial, handwriting exemplars for analysis by a handwriting expert that defendant had retained to compare the exemplars with the signatures on the packing slips. The trial court denied the motion, ruling that it could not compel production of evidence from a nonparty before trial, but it reserved ruling on the issue whether the exemplars could be produced by the witnesses during trial.

At the beginning of trial, defendant again moved for an order compelling the witnesses to produce handwriting exemplars. The court concluded that defendant was attempting to use the motion as a discovery device in hopes of finding evidence that would support his defense. Describing the motion as a "fishing expedition," the court ordered that the witnesses "not be required or asked to produce a handwriting sample."

Later, during the state's case-in-chief, defendant made three offers of proof—one as to each witness—in which he asked whether the witnesses would be willing to provide a handwriting sample for analysis by a handwriting expert whom he had retained for that purpose. Two of the witnesses stated that they were willing, and the state stipulated that the third witness would be willing as well. The court ruled that defendant could not obtain the exemplars as part of the offers of proof.

Although he had subpoenaed the same three witnesses, defendant did not call them in his case-in-chief. Nor did he attempt to obtain handwriting exemplars from them

---

[2] ORS 136.580(2) provides that, upon motion of a party, the trial court may order early production of documents requested in a subpoena *duces tecum*. Defendant argued that the statute included documents that the subpoena recipient would be asked to create at trial and thus authorized the court to order early production of handwriting exemplars.

in any other way. The jury ultimately convicted defendant of the charges related to the fictitious sales.[3] This appeal followed.

Defendant assigns error to the trial court's denial of his motion to have the witnesses provide handwriting exemplars during trial. Citing the constitutional right to compulsory process, he argues that a witness has an obligation to produce evidence when subpoenaed to appear at trial. According to defendant, the evidence that a witness is required to provide is not limited to testimony, but includes the physical attributes of the witness, including his or her handwriting. Defendant relies on case law from the United States Supreme Court holding that people summoned as witnesses are obligated to provide relevant evidence, including certain forms of nontestimonial physical evidence such as handwriting exemplars.

The state responds that the trial court lacked authority to compel the witnesses to give handwriting exemplars. It contends that the cases on which defendant relies are distinguishable because the persons ordered to give exemplars in those cases either were defendants or were subpoenaed by a grand jury, whereas here, defendant sought exemplars from nonparty witnesses in a criminal trial. The state argues further that, even if the trial court erred by denying the motion to compel, the error was either harmless or moot because defendant had ample opportunity to obtain the exemplars from the witnesses, who were willing to give them to defendant.

■    We agree with defendant that the court erred in denying the motion to compel. A criminal defendant has the right to subpoena witnesses. *See* ORS 136.567. A person who has been subpoenaed has an obligation to appear as a witness and give evidence. The scope of evidence that a witness can be compelled to give is defined in terms of the general duty to testify and privileges, which are exceptions to the duty, rather than specific grants of authority to courts to compel a witness to give evidence, as the state contends. *See*

---

[3] Although the theft counts were charged in the first degree, on each count, the jury convicted defendant of the lesser-included charge of third-degree theft.

*United States v. Euge*, 444 US 707, 712, 100 S Ct 874, 63 L Ed 2d 141 (1980) ("The scope of the 'testimonial' or evidentiary duty imposed by common law or statute has traditionally been interpreted as an expansive duty limited principally by relevance and privilege." (Footnote omitted.)). A court's authority rests in its obligation to enforce the duty to give evidence unless a testimonial privilege applies.

For present purposes, there is no material distinction in the law between compelling a witness to testify and compelling a witness to produce handwriting exemplars. "One application of [the] broad duty to provide relevant evidence has been the recognition, since early times, of an obligation to provide certain forms of nontestimonial physical evidence," including handwriting exemplars. *Id.* at 713.

■     As noted, the state contends that *Euge* and other cases describing the duty to give evidence are distinguishable because they involved subpoenas either issued to criminal defendants or issued by grand juries. However, the state does not explain why that distinction is material, and we can see no reason that it is. The duty to give evidence does not vary depending on the status of the witness or the nature of the proceeding. Indeed, in *Euge*, in holding enforceable a summons directing the respondent, the subject of an Internal Revenue Service investigation, to appear and give handwriting exemplars, the Court relied on *United States v. Dionisio*, 410 US 1, 93 S Ct 764, 35 L Ed 2d 67 (1973), which involved a witness subpoenaed to produce a voice exemplar for a grand jury, and *United States v. Bryan*, 339 US 323, 70 S Ct 724, 94 L Ed 884 (1950), which involved a witness who was ordered by a congressional subpoena to appear and produce certain documents. *Bryan*, in turn, relied on *Blackmer v. United States*, 284 US 421, 52 S Ct 252, 76 L Ed 375 (1932), which involved a witness subpoenaed to testify for the prosecution in a criminal case. Contrary to the state's contention, the principles implicated by the duty to give evidence apply universally. *See Bryan*, 339 US at 331 ("[P]ersons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. * * * We have often iterated the importance of this public duty, which every person within the jurisdiction

of the Government is bound to perform when properly summoned.").

In short, having been subpoenaed, the witnesses in this case had a duty to give evidence, including handwriting exemplars. The trial court erred in denying defendant's motion to compel them to provide the exemplars.

We turn to whether the error was harmless. An error at trial is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The state does not dispute that the handwriting exemplars could have affected the verdict had the jury concluded that someone other than defendant signed the packing slips. The state nonetheless contends that the error was harmless, asserting that the trial court did not prohibit the witnesses from providing defendant with the handwriting exemplars. According to the state, because the witnesses were willing to give the exemplars to defendant, he could have sent an investigator to ask them before trial to provide exemplars, and they likely would have agreed to do so. Furthermore, in the state's view, defendant could have obtained the exemplars during a recess in the trial itself.

We conclude that the error was not harmless. When defendant made the second offer of proof, the state objected, arguing that the issue had been resolved by the court's earlier ruling on defendant's motion to compel. As noted above, at the beginning of the trial, the court ordered "that the witnesses not be required *or asked* to produce a handwriting sample." (Emphasis added.) In response to the state's objection during defendant's second offer of proof, the court stated, "The ruling will stay the same." Counsel could reasonably have understood the court to have ruled that, even though the witness was willing to provide an exemplar, defendant was precluded from asking for one. In all events, "the fact that defendant could have taken measures that would have rendered the trial court's error harmless does not mean that the error *was* harmless." *State v. Ramirez*, 222 Or App 603, 604, 195 P3d 404 (2008) (emphasis in original). Accordingly, we cannot say that there is little likelihood that the error affected the verdict. For the same reason, we also reject the state's mootness argument.

The state asks that, in the event that we reverse defendant's conviction, we remand with instructions for the trial court to order the three witnesses to produce the exemplars for analysis by defendant's expert and to grant a new trial only if the expert determines that one or more of the exemplars matches the signatures on the falsified packing slips. We decline to order that remedy. Defendant is entitled to a new trial.

Reversed and remanded.