# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 128

### OCTOBER TERM, A.D. 2013

#### October 16, 2013

ANTHONY DUANE WEST,

Appellant
(Defendant),

v.

S-13-0012

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Prof. Darrell D. Jackson, Faculty Director, Prosecution Assistance Clinic; Emily N. Thomas, Student Director; Thomas Szott, Student Intern.  Argument by Mr. Szott.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1]    Anthony Duane West was convicted after a jury trial of conspiracy to commit burglary.   He claims the district court erred by refusing to order one of his co-conspirators to submit handwriting exemplars so that Mr. West's expert witness could evaluate whether the co-conspirator was the author of certain notes sent in jail.   We conclude that the subpoena procedure may be used to order a witness to provide handwriting exemplars; however, any error was harmless.

[¶2]    We affirm.

## ISSUE

[¶3]    The issue on appeal is:

Did the trial court commit prejudicial error when it denied Mr. West's request for handwriting exemplars from a co-conspirator?[1]

## FACTS

[¶4]    Jeffery Stumpf was the CEO of Tatooine Industries International, an electronics company with a recycling facility east of Cheyenne, in Laramie County, Wyoming.   His cousin, Edwin Stumpf, was the supervisor of the recycling facility.   Mr. West worked for Tatooine for a short period of time in 2009.   Although he was generally a good employee, he was terminated because he did not show up for work or call to explain his absence in accordance with company policy.   Mr. West subsequently claimed that he was injured on the job on his last day of work.   Mr. West filed a workers' compensation claim, and Tatooine objected.   Prior to the contested case hearing, the matter was settled, apparently for the benefits Mr. West had already received, but without any cash payout to him.

[¶5]    On December 4, 2010, approximately one week after the workers' compensation settlement, Edwin Stumpf, who was staying at the Tatooine facility, heard a noise at approximately 11:00 p.m.   He looked out the window and saw a car outside and a man walking toward the building.   He thought there were two or three other people in the car. As the vehicle left, Edwin placed calls to 911 and Jeffery Stumpf.

[¶6]    Jeffery Stump drove to a spot where he could see traffic traveling into Cheyenne and located a vehicle matching the description provided by Edwin.   He followed the vehicle and called 911 to report his location.   Eventually, the vehicle pulled over and two

---

[1] The State asserts the issue was not properly preserved because the notes do not appear in the appellate record.   We will consider the merits of the issue because the record on appeal contains sufficient information as to the nature of the notes.

1

males got out and walked toward Jeffery's truck. When he backed up, they returned to their vehicle. Law enforcement stopped the vehicle a short time later and found four people inside—Mr. West, Autumn Garcia, Zachary Hunter, and Robert Stevenson.

[¶7]  The State charged Mr. West with conspiracy to commit burglary in violation of Wyo. Stat. Ann. § 6-1-303(a) (LexisNexis 2013). Mr. West claimed that, while in jail, Mr. Stevenson had passed notes, or "kites," to a co-conspirator encouraging him to "pin" the criminal activities on Mr. West. Consequently, he filed a pre-trial motion to compel Mr. Stevenson to provide handwriting exemplars. He proposed to have a handwriting expert evaluate the exemplars and the notes and testify regarding the authorship of the notes. Although the State did not object, the district court denied the motion, ruling that it did not have authority to require a witness to do anything other than appear and could not, therefore, order Mr. Stevenson to provide handwriting samples.

[¶8]  Ms. Garcia testified at the trial that she was Mr. Stevenson's girlfriend and drove the others to Tatooine on December 4, 2010. She stated that Mr. West gave her directions to the facility, but she did not know why they were going there. The others directed her to go to the door to see if anyone was in the building. The men subsequently got out of the vehicle, and Ms. Garcia and Mr. Stevenson went around the building and tried a door, which was locked. At that point, someone said they needed to "go because there was someone there." Ms. Garcia also testified that after they were arrested, Mr. Stevenson contacted her by letter saying that he was "lying and stuff." He told her not to "tell them this, don't tell them that," but she claimed she had not followed his directions.

[¶9]  Zachary Hunter testified that his sister was Mr. West's girlfriend. He stated that on December 4, 2010, Mr. West said "he was going to do something" and asked if Mr. Hunter "wanted in on it." The plan was to obtain TVs and metal from a building, and Mr. West had drawn a blueprint of the building on a piece of paper. Mr. Hunter was told he would be "paid good just to be a lookout." Ms. Garcia and Mr. Stevenson picked up Mr. Hunter and Mr. West, and they all went to the Tatooine facility. According to Mr. Hunter, Mr. West provided directions because he had worked there before. Mr. Hunter testified that Ms. Garcia had knocked on the door to see if anyone was there and then they all got out and looked around. They left after Mr. Stevenson noticed there was someone at the facility. Mr. Hunter also testified that, while in jail, he received notes from Mr. Stevenson, encouraging him to "pin it all" on Mr. West. Mr. Hunter said he did not pay attention to the notes because he was going to tell the truth.

[¶10]  Mr. West also testified at trial. He claimed that he was "high" from smoking marijuana on December 4, 2010, and did not plan to go to Tatooine or to steal anything. He claimed he was surprised when they ended up at the facility. Mr. West stated that Mr. Hunter's brother had given him the notes in which Mr. Stevenson had encouraged Mr. Hunter to blame Mr. West for the burglary plan.

2

[¶11] The jury found Mr. West guilty of conspiracy to commit burglary and he was sentenced to serve thirty to forty-eight months in prison, but the sentence was suspended and he was placed on probation for five years. Mr. West then appealed to this Court.

## DISCUSSION

[¶12] Mr. West asserts the district court denied his constitutional rights to compulsory process and due process of law when it refused to require Mr. Stevenson to provide handwriting exemplars for evaluation by his handwriting expert. To the extent Mr. West's argument involves constitutional issues, we review it *de novo. Smith v. State,* 2009 WY 2, ¶ 35, 199 P.3d 1052, 1063 (Wyo. 2009); *Bush v. State,* 2008 WY 108, ¶ 58, 193 P.3d 203, 217 (Wyo. 2008); *Hannon v. State,* 2004 WY 8, ¶ 13, 84 P.3d 320, 328 (Wyo. 2004). The abuse of discretion standard, however, applies to the question of whether the district court properly disallowed the evidence. *Bush,* ¶ 58, 193 P.3d at 217; *Vigil v. State,* 2004 WY 110, ¶ 17, 98 P.3d 172, 177 (Wyo. 2004). "A trial court abuses its discretion when it could not have reasonably concluded as it did. In this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious." *Szymanski v. State,* 2007 WY 139, ¶ 15, 166 P.3d 879, 883 (Wyo. 2007) (citations omitted). Moreover, a violation of a right to compel process is not automatically reversible; prejudice must be demonstrated before reversal will be required. *See State v. Spears,* 76 Wyo. 82, 98, 300 P.2d 551, 557 (Wyo. 1956). An error which violates a constitutional right is presumed prejudicial unless the reviewing court is convinced it was harmless beyond a reasonable doubt. *Daniel v. State,* 2003 WY 132, ¶ 15, 78 P.3d 205, 212 (Wyo. 2003); *Harlow v. State,* 2003 WY 47, ¶ 43, 70 P.3d 179, 194 (Wyo. 2003).

[¶13] A criminal defendant is entitled to compulsory process under the United States and Wyoming constitutions. The Sixth Amendment to the United States Constitution states in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor[.]" Similarly, Wyo. Const. Art. 1, § 10, states in part: "In all criminal prosecutions the accused shall have the right to defend in person and by counsel . . . [and] to have compulsory process served for obtaining witnesses[.]" In addition, the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, § 6 of the Wyoming Constitution guarantee a criminal defendant the right to due process of law.

[¶14] In general, the right to obtain witnesses is accomplished by issuance of a subpoena. W.R.Cr.P. 17 governs subpoenas in criminal cases:

> *(a) For attendance of witnesses; form; issuance. –*
> Upon the filing of a precipe therefore, a subpoena shall be
> issued by the clerk under the seal of the court. It shall state
> the name of the court and the title, if any, of the proceeding,

and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served.

\* \* \* \*

*(d) For production of documentary evidence and of objects.* – A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, objects, and portions thereof, to be inspected by the parties and their attorneys.

*(e) Service.* – A subpoena may be served by the sheriff, or by any other person, over the age of 19 years, not a party to the action, appointed for such purpose by the clerk. Service of a subpoena shall be made by delivering a copy thereof to the person named[.]

The failure of a person to obey a subpoena may be punished with a contempt action. *See* W.R.Cr.P. 17(g) and 42(a)(2)(H).

[¶15] Courts have routinely held that a person may be required to provide a handwriting sample under the authority of a subpoena. *See, e.g., United States v. Euge,* 444 U.S. 707, 711-13, 100 S. Ct. 874, 877-79, 63 L. Ed. 2d 141 (1980); *State v. Jackson,* 196 P.3d 559, 561-62 (Ore. Ct. App. 2008). In *Euge,* 444 U.S. at 711, 100 S. Ct. at 878, the United States Supreme Court stated that the duty to appear and give testimony "has traditionally encompassed a duty to provide some forms of nontestimonial, physical evidence, including handwriting exemplars." That was true even though the IRS statute at issue did not explicitly authorize handwriting exemplars. Handwriting is nontestimonial and there is no reasonable expectation of privacy attached to it; therefore, a command to provide a handwriting sample does not violate a witness's Fifth Amendment right against self-incrimination or Fourth Amendment right to avoid illegal searches and seizures. *See, e.g., Euge,* 444 U.S. at 718, 100 S. Ct. at 881-82; *United States v. Doe,* 457 F.2d 895, 896-99 (2d Cir. 1972). *See also, Brunmeier v. State,* 733 P.2d 265, 266-67 (Wyo. 1987) (holding a defendant can be compelled to provide handwriting exemplars without

violating the Fifth Amendment to the United States Constitution or Art. I, § 11 of the Wyoming Constitution).

[¶16]  In *Fathke v. State,* 951 P.2d 1226, 1228 (Alaska Ct. App. 1998), the Alaska Court of Appeals concluded that Rule 17(c) of the Alaska Rules of Criminal Procedure which governed subpoenas required a witness to submit to finger and palm printing.  Alaska's rule was almost identical to W.R.Cr.P. 17(d).  The Alaska court held that the requirement to produce "objects" included fingerprints. The court indicated that certain forms of nontestimonial physical evidence, such as fingerprints and handwriting samples, are included within a witness's duty of production.  *Id.,* citing *Euge, supra.*  Similarly, the Oregon Court of Appeals held in *Jackson,* 196 P.3d at 562, that a subpoenaed witness can be compelled to provide handwriting exemplars.   In that case, the trial court violated the defendant's right to compulsory process by refusing to require the witnesses to provide samples of their handwriting.  *Id.*

[¶17] Even prior to the enactment of specific rules and statutes, the common law imposed a similar evidentiary obligation on summoned persons.  In *United States v. Bryan*, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950), the Supreme Court stated: "[P]ersons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. . . . We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned." In general, a summoned party must "give what testimony one is capable of giving," subject to recognized exemptions and/or privileges.  *Id.*

> One application of this broad duty to provide relevant evidence has been the recognition, since early times, of an obligation to provide certain forms of nontestimonial physical evidence. . . .  [T]he common-law evidentiary duty permitted the compulsion of various forms of physical evidence. In *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) [limited on other grounds, *Missouri v. McNeely,* 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013)], this Court observed that traditionally witnesses could be compelled, in both state and federal courts, to submit to "fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." In *Gilbert v. California*, 388 U.S. 263, 266-267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), handwriting was held, "like the ... body itself" to be an "identifying physical characteristic," subject to production. In *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct.

764, 35 L.Ed.2d 67 (1973), and *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), this Court again confirmed that handwriting is in the nature of physical evidence which can be compelled by a grand jury in the exercise of its subpoena power.

*Euge,* 444 U.S. at 713, 100 S. Ct. at 879 (some citations and a footnote omitted). *See also*, *Palmer v. United States,* 530 F.2d 787, 788 (8th Cir. 1976) (per curiam) (holding that, prior to enactment of a specific statute, federal courts had "inherent power to compel the production of [handwriting] exemplars before a grand jury through the civil contempt power").

[¶18] In Wyoming, we have not directly addressed the issue of whether a witness in a criminal case can be compelled to provide a handwriting sample. We do, however, have some direction on the matter. In *Brunmeier,* 733 P.2d at 266-67, we followed the general rule and held that a defendant can be compelled to provide handwriting exemplars without violating the Fifth Amendment to the United States Constitution or Art. I, § 11 of the Wyoming Constitution. In *Van Riper v. State,* 882 P.2d 230, 236-37 (Wyo. 1994), we held the district court did not abuse its discretion when it denied the appellant's request to have a witness provide a handwriting exemplar during cross examination at trial. In making that ruling, we recognized the district court has discretion regarding the extent and manner of cross examination. We suggested that a witness may be required to provide a handwriting sample under appropriate circumstances, but noted the appellant had not suffered any harm from the court's ruling because a document showing the witness's handwriting had already been admitted into evidence. *Id.* Consistent with Wyoming precedent and the general rule, we conclude that a witness in a criminal proceeding may be required to provide handwriting exemplars through the subpoena process.

[¶19] Thus, Mr. West was entitled to subpoena Mr. Stevenson's handwriting exemplars. However, that was not what he did. Instead, Mr. West filed a motion to compel Mr. Stevenson to provide the exemplars, which, according to the certificate of service, was served upon Mr. Stevenson by mail and the State by hand delivery. It does not appear the motion to compel samples of his handwriting was served upon Mr. Stevenson in the manner required by W.R.Cr.P. 17(e).[2] At the hearing on the motion to compel, Mr. Stevenson was neither present nor represented. Not surprisingly, the prosecutor did not object to the motion, stating "we don't have a dog in that fight. I don't represent Mr. Stevenson. I'm not prosecuting Mr. Stevenson [in this case]."

---

[2] The defense subpoenaed Mr. Stevenson to appear for trial, and the State also sought his appearance. Mr. Stevenson, however, refused to testify and no further action was taken to compel him to do so. There is no indication that the issue of providing handwriting exemplars at trial or through the authority of the subpoena was raised.

6

[¶20] Had the subpoena procedure been used, Mr. Stevenson could have moved to quash it and the proper parties would have been involved. Thus, we agree with the district court that, under these circumstances, the appropriate procedure was not used. However, consistent with our discussion above, we disagree with the district court's statement that there is no legal authority to require a non-party to appear before trial to provide handwriting exemplars. The subpoena process provides such authority.

[¶21] Nevertheless, in order to warrant reversal of a conviction, error must be prejudicial. Even when a constitutional error is involved, reversal is not required if we conclude it was harmless beyond a reasonable doubt. *Spears,* 300 P.2d at 557; *Daniel,* ¶ 15, 78 P.3d at 212. The purpose of the handwriting exemplars was to provide a means for Mr. West's handwriting expert to conclude that Mr. Stevenson authored the notes which encouraged Mr. Hunter to "pin" the crime on Mr. West. That issue was not, however, in dispute at trial. Mr. Hunter testified that Mr. Stevenson had given him the notes, and Ms. Garcia testified that he had also sent her letters encouraging her to lie. As such, the uncontradicted evidence in the record established that Mr. Stevenson had, in fact, written notes encouraging the other co-conspirators to implicate Mr. West. Mr. West's defense counsel emphasized Mr. Hunter's testimony about Mr. Stevenson's notes in her closing argument. Testimony from a handwriting expert would not have added anything to the evidence. Consequently, any error regarding Mr. West's right to obtain handwriting exemplars from a witness was harmless beyond a reasonable doubt.

[¶22] Affirmed.