# IN THE SUPREME COURT, STATE OF WYOMING

# 2014 WY 74

APRIL TERM, A.D. 2014

June 11, 2014

KYLE JOSEPH ANDERSON,

Appellant
(Defendant),

v.

S-13-0186

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Jennifer E. Zissou, Assistant Attorney General. Argument by Ms. Zissou.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]   A jury found Kyle Joseph Anderson guilty of third-degree sexual abuse of a minor, and he appeals.  He argues that the prosecutor's manipulation of the rules resulted in judge-shopping which deprived him of his constitutional right to due process.  He also contends that the jury was given confusing and conflicting jury instructions regarding venue, which were compounded by the prosecutor's misstatements of the law, and that venue was not established in Sweetwater County.  We affirm.

*ISSUES*

[¶2]   1.   Did the prosecutor's tactics amount to judge-shopping so as to deprive the appellant of his right to due process?

2.   Was the jury correctly instructed regarding venue?

3.   Did the evidence establish that venue in Sweetwater County was proper?

4.   Did the prosecutor's misstatement of the law regarding venue in her closing argument constitute reversible error?

*FACTS*

[¶3]   Mr. Anderson boarded a Greyhound bus in Denver, Colorado, and sat next to B.P., an unaccompanied fifteen-year-old girl, who was travelling from Kansas to Oregon.  Mr. Anderson became "touchy-feely" and got into B.P.'s "space."  When B.P. feigned sleep, Mr. Anderson reached in her shorts and "stroked" her vagina on top of her underwear for "10 to 15 seconds."  She kept her eyes closed for another thirty minutes, and when she opened her eyes, Mr. Anderson again became "touchy-feely."  Another passenger noticed B.P.'s discomfort and forced Mr. Anderson to move to the front of the bus.  When the bus arrived in Rock Springs, one of the passengers contacted 911.  Officers from the Rock Springs Police Department responded, along with Deputy Wallendorff of the Sweetwater County Sheriff's Office.  After speaking with B.P., Deputy Wallendorff located Mr. Anderson and initiated a conversation which eventually led to his arrest.

[¶4]   There was conflicting testimony regarding where the bus was when the touching occurred.  The bus driver testified that she left Denver at 2:30 a.m. and stopped in Laramie, Wyoming, for a fifteen minute break.  After leaving Laramie at 4:15 a.m., the bus drove west, pulling through the truck stop in Rawlins, Wyoming, to look for passengers at 7:00 a.m.  There were no passengers in Rawlins and the bus continued west without stopping and arrived in Rock Springs at 9:00 a.m.  The driver testified that the bus traveled at a continuous speed of 68 miles per hour.

1

[¶5]   Deputy Wallendorff testified at trial that, although the crime occurred on the bus traveling between Rawlins and Rock Springs, he was unable to pinpoint exactly where it occurred.  B.P., who is not a resident of Wyoming, testified that after Mr. Anderson stopped touching her vagina, she continued to pretend to be asleep for "about 30 more minutes."  On cross-examination, she said that the timeframe was "30 or 45 minutes." When she opened her eyes at "probably about 7:00 or 8:00 in the morning," she was not sure where she was.  Shortly thereafter, one of the passengers confronted Mr. Anderson and forced him to move to the front of the bus.  The passenger said that between thirty minutes and one hour elapsed between this confrontation and the stop in Rock Springs. B.P. testified that she did not remember how much time elapsed from the time she opened her eyes to her arrival in Rock Springs.  When defense counsel asked B.P. if she had previously said that this took about two hours, she replied "I'm not sure about the times, but yeah, probably."

[¶6]   Mr. Anderson was charged on July 20, 2012, in Sweetwater County, Wyoming, with three violations: third-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-316(a)(i) (LexisNexis 2013), third-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-304(a)(iii) (LexisNexis 2013), and misdemeanor possession of marijuana in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(A) (LexisNexis 2013).

[¶7]   The case was assigned to Judge James, and Mr. Anderson was arraigned on August 1, 2012.  He entered not guilty pleas, and the case was set for a jury trial on November 5, 2012.  Mr. Anderson filed a motion to suppress statements he had made to law enforcement officers without having been informed of his rights under *Miranda*.  At the conclusion of the October 30, 2012 hearing on the motion to suppress, Judge James gave her oral ruling suppressing the use of Mr. Anderson's statements to law enforcement.

[¶8]   Four days before trial, the State requested a continuance, stating it was having difficulties contacting witnesses.  When asked about her diligence in contacting the witnesses, the prosecutor responded, "I don't know that I can answer that today, your honor."  Judge James denied the motion for continuance.

[¶9]   The next day, the prosecutor filed a motion to dismiss the case without prejudice. Judge James signed the order dismissing the case without prejudice the same day.  Also on the same day, the State refiled the same three charges in a new docket.  Mr. Anderson was bound over on that refiled case on November 9, 2012.  The case was once again assigned to Judge James.  On November 16, 2012, the prosecutor filed a motion for the peremptory disqualification of Judge James, and the case was assigned to Judge Lavery.

[¶10] Mr. Anderson filed a new motion to suppress, asserting that Judge James' *Miranda* ruling should still be binding as "law of the case."  At the January 17 hearing on Mr. Anderson's motion to suppress, the prosecutor asserted that the suppression ruling by

2

Judge James was not effective in the newly-filed case. "This is not the same case, it's filed anew, and so I don't believe law of the case applies." On January 24, 2013, Judge Lavery held a hearing on Mr. Anderson's motion to suppress, and issued his order denying the motion.[1]

[¶11] The case proceeded to trial on the charge of third-degree sexual abuse of a minor (the State had dismissed the two other charges). At trial, the State played a portion of Mr. Anderson's interview with the police, the subject of Mr. Anderson's motion to suppress.

[¶12] The jury received, among others, the following instructions:

**Instruction No. 7**

The law raises no presumption against the defendant but rather, the presumption of law is in favor of his innocence. In order to convict the defendant of the crime charged, every material and necessary element to constitute such crime must be proved beyond a reasonable doubt, and if the jury has a reasonable doubt on any necessary element, it is your duty to give the benefit of such doubt to the defendant and acquit him.

**Instruction No. 13**

The elements of the crime of Sexual Abuse of a Minor in the Third Degree, as charged in Count I of this case, are:

1. On or about the 18th day of July, 2012
2. In Sweetwater County, Wyoming
3. The Defendant, KYLE JOSEPH ANDERSON
4. Who was seventeen (17) years of age or older
5. Engaged in sexual contact with B.P.; and
6. B.P. was between the ages of thirteen (13) and fifteen (15) years of age at the time of the sexual contact; and
7. B.P. was at least four (4) years younger than the Defendant.

---

[1] The district court ruled that the "first seven and one half minutes" of Anderson's interview with the police were admissible.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

**Instruction No. 15**

You are instructed that an offense shall be prosecuted in the county in which the offense is alleged to have been committed. When the location of the offense cannot be established with certainty, then an offense may be prosecuted in any county where the essential facts comprising the crime are discovered, or in any county in which the alleged victim was transported. For purposes of these instructions, when the location of the offense cannot be established with certainty, an offense takes place in Sweetwater County if the essential facts comprising the crime are discovered in Sweetwater County or if B.P. was transported through Sweetwater County.

Mr. Anderson objected to Instruction 15 prior to it being given to the jury, saying "I think that a special verdict form or a special question to the jury with an explicit finding would probably be a preferable way. . . . "

[¶13] At the close of the State's evidence, Mr. Anderson moved for a judgment of acquittal pursuant to W.R.Cr.P. 29. He argued that the evidence established a "definite location" of the offense in Carbon County. The district court took the motion under advisement.

[¶14] At closing, the prosecutor explained the venue provision as follows:

So in that type of situation, where it is not known, then it can be charged and prosecuted in either the county where it's discovered, which is what happened here, it's reported in Rock Springs, police arrive, they investigate it, in Rock Springs, Sweetwater County, Wyoming. [Victim] doesn't even disclose until she's actually off the bus, or on the bus, when it's stopped in Rock Springs, Wyoming. That's when it's discovered, that's when it's investigated, and that's why it

4

can be prosecuted here and why you can find him guilty in Sweetwater County.

[¶15] The jury returned a guilty verdict. Mr. Anderson renewed the motion for judgment of acquittal he had filed at the close of the State's case, arguing that the State had not offered evidence to prove that the crime had occurred in Sweetwater County, an essential element of the crime charged. The district court denied the motion, and sentenced Mr. Anderson to eight to ten years imprisonment. Mr. Anderson timely filed this appeal, in which he raises the issues of judge-shopping and venue. He does not challenge the second ruling on the motion to suppress.

## *DISCUSSION*

### I. *Did the prosecutor's tactics amount to judge-shopping so as to deprive the appellant of his right to due process?*

[¶16] The State correctly argues that the prosecutor violated no rules when she dismissed and refiled the case, and then peremptorily challenged Judge James. Wyoming Rule of Criminal Procedure 48 authorizes the State to dismiss its Information; and under Wyoming law, it may refile the same case, if it has been dismissed without prejudice. *Kerns v. State*, 920 P.2d 632, 639-40 (Wyo. 1996). Wyoming Rule of Criminal Procedure 21.1(a), in effect at the time, allowed for the peremptory challenge of a judge, "at the time the indictment or information is filed in the district court."[2] However, as the State concedes, technical compliance with the rules does not necessarily prevent a constitutional violation. Mr. Anderson contends that the prosecutor's manipulation of the rules to obtain a new judge deprived him of due process.

[¶17] This Court reviews constitutional claims *de novo*. *Sanchez v. State*, 2013 WY 159, ¶ 15, 314 P.3d 1177, 1180 (Wyo. 2013). Constitutional errors are presumed prejudicial, unless this Court is convinced the error was harmless beyond a reasonable doubt. *West v. State*, 2013 WY 128, ¶ 12, 311 P.3d 157, 160 (Wyo. 2013).

[¶18] The Fifth Amendment's due process clause guarantees the right to an impartial decisionmaker, *Concrete Pipe & Prods. of California., Inc. v. Constr. Laborers Pension Trust for Southern California*, 508 U.S. 602, 617, 113 S.Ct. 2264, 2277, 124 L.Ed.2d 539 (1993), but not to a particular judge, *United States v. Braasch*, 505 F.2d 139, 147 (7th Cir. 1974). "[A] defendant has no vested right to have his case tried before any particular

---

[2] Wyoming Rule of Criminal Procedure 21.1(a) was suspended by order dated December 4, 2012, and repealed by order dated November 26, 2013, because misuse of the rule by attorneys had "risen to an unacceptable level."

judge[.]" *United States v. Keane*, 375 F.Supp. 1201, 1204 (N.D. Ill. 1974). As the United States Supreme Court has recognized:

> "Judges are not fungible; they cover the constitutional spectrum; and a particular judge's emphasis may make a world of difference when it comes to rulings on evidence, the temper of the courtroom, the tolerance for a proffered defense, and the like. Lawyers recognize this when they talk about 'shopping' for a judge . . . ."

*Laird v. Tatum*, 409 U.S. 824, 834, 93 S.Ct. 7, 13, 34 L.Ed.2d 50 (1972) (quoting *Chandler v. Judicial Council of the Tenth Circuit of the United States*, 398 U.S. 74, 137, 90 S.Ct. 1648, 1681, 26 L.Ed.2d 100 (1970) (Douglas, J., dissenting)). Nevertheless, there is a presumption that judges conduct themselves with "honesty and integrity." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *see also Dorr v. Wyo. Bd. of Certified Pub. Accountants*, 2006 WY 144, ¶ 42, 146 P.3d 943, 960 (Wyo. 2006) (discussing "presumption of honesty and integrity in those serving as adjudicators"). Even the case cited by Mr. Anderson, *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004), held that "conviction under a judicial assignment system that invokes concerns about impartiality does not, by itself, deprive [the petitioner] of a neutral and impartial judge," and affirmed the district court's denial of the petition for writ of habeas corpus.

[¶19] Mr. Anderson does not suggest that there is any basis to overcome the presumption of judicial impartiality.[3] He instead argues that he need not establish prejudice because the prosecutor's conduct rose to the level of structural error.

[¶20] At oral argument, Mr. Anderson asserted the prosecutorial judge-shopping was "structural error," but his brief contains only a passing reference to structural error, without analysis. Structural error is a defect "affecting the framework within which the trial proceeds, rather than simply errors in the trial process itself." *Granzer v. State*, 2008 WY 118, ¶ 16, 193 P.3d 266, 271 (Wyo. 2008) (citing *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999)). "'Errors of this type are so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome.'" *United States v. Pearson*, 203 F.3d 1243, 1260 (10th Cir. 2000) (quoting *Neder*, 527 U.S. at 8, 119 S.Ct. at 1833).

[¶21] The bar for finding structural error is high. The United States Supreme Court has held:

---

[3] Mr. Anderson has not appealed Judge Lavery's ruling on the motion to suppress. He concedes that, although it was different than Judge James' ruling in the first case, the second ruling would pass muster under an abuse of discretion standard.

6

[W]e have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, [1549] 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction)).

*Neder*, 527 U.S. at 8, 119 S.Ct. at 1833. This Court has also recognized the high bar for finding structural error in the context of eliciting witness opinions of guilt:

We recently employed the structural/trial error dichotomy in *Large v. State*, 2008 WY 22, ¶ 23, 177 P.3d 807, 814 (Wyo. 2008). In *Large*, we revisited long standing precedent which stated that it was error per se for a prosecutor to elicit a witness's opinion about the defendant's guilt and the defendant need not show prejudice in order to obtain a reversal of his conviction. Overruling our precedent, we decided that "[w]hile it may be error to admit an opinion of guilt, it is trial error rather than structural error . . . . Accordingly, we will no longer treat a prosecutor-elicited opinion of guilt as error per se." *Id.*, ¶ 30, 177 P.3d at 816.

*Granzer*, 2008 WY 118, ¶ 17, 193 P.3d at 271.

[¶22] The Tenth Circuit found that a case assignment system in Kansas which allowed the prosecutor to select the judge, though improper, did not rise to the level of structural error. *Pearson*, 203 F.3d at 1263.[4] It found there were "important distinctions" between

---

[4] Many courts have similarly found no harmless error in judicial selection systems that are subject to prosecutorial influence. *Firishchak v. Holder*, 636 F.3d 305, 309 (7th Cir. 2011) ("A non-randomly assigned judge, without more, simply does not make for a due process violation[.]"); *Francolino*, 365 F.3d at 140 (Prosecutorial judge-shopping raises serious concerns, but does not require habeas relief absent a showing of actual prejudice.); *Tyson v. Trigg*, 50 F.3d 436, 439-42 (7th Cir. 1995) (upholding constitutionality of a case assignment system that permitted prosecutors to play an active role in selecting

allowing a prosecutor to select the judge initially, and "allowing a prosecutor [to] perform judicial functions *after* the judge has been selected and the case proceeds to trial and final decision (i.e., functions like ruling on motions and objections, issuing findings of fact and conclusions of law, and sentencing defendants)." *Id.* at 1261. Here, Mr. Anderson does not challenge prosecutorial influence in the initial selection of the judge; rather, he challenges the prosecutor's manipulation of the dismiss-and-refile and peremptory challenge rules, which resulted in a new judge *after* the existing judge had made a ruling adverse to the prosecution.

[¶23] Several Michigan Court of Appeals cases have held that dismissal and refiling of charges with a different judge to obtain a more favorable evidentiary ruling violates a defendant's due process rights to a fair proceeding. *People v. George*, 318 N.W.2d 666, 667 (Mich. Ct. App. 1982); *People v. Walls*, 324 N.W.2d 136, 139 (Mich. Ct. App. 1982); *People v. Vargo*, 362 N.W.2d 840, 842 (Mich. Ct. App. 1984); *People v. Turmon*, 340 N.W.2d 110, 112 (Mich. Ct. App. 1983); *People v. Starlard*, 395 N.W.2d 41, 42 (Mich. Ct. App. 1986), *vacated on other grounds by* 400 N.W.2d 603 (1987); *People v. Stafford*, 423 N.W.2d 634, 636 (Mich. Ct. App. 1988). However, the Michigan Supreme Court declined to follow that precedent without evidence of an impermissible judge-shopping motive or pretext. *People v. Dunbar*, 625 N.W.2d 1, 5-6 (Mich. 2001), *overruled in part on other grounds by People v. Jackson*, 769 N.W.2d 630, 633 (Mich. 2009).

[¶24] Other states have held that a prosecutor should not be allowed to file a new charge after it has been dismissed at the preliminary hearing for lack of probable cause. *Jones v. State*, 481 P.2d 169, 171 (Okla. Crim. App. 1971); *State v. Brickey*, 714 P.2d 644, 647-48 (Utah 1986); *Walker v. Schneider*, 477 N.W.2d 167, 175 (N.D. 1991). This minority view was rejected by this Court in *Rathbun v. State*, 2011 WY 116, ¶¶ 17-22, 257 P.3d 29, 35-37 (Wyo. 2011), where we cited with favor the proposition that most courts "permit refiling at will, including refiling on the same evidence before a different magistrate, absent proof that the prosecutor's purpose is to harass the defendant." *Id.* at ¶ 18, at 36 (quoting 4 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 14.3(c), at 333-34 (3d ed. 2007)).[5]

---

trial judges, although it described the system as "unsightly"). Other courts who have considered the question agree that due process does not demand random assignment of judges. *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) (Assignments need not be random and can be made for any reason, so long as they are not made in a biased manner "or [with] the desire to influence the outcome of the proceedings."); *United States v. Osum*, 943 F.2d 1394, 1400 n.3 (5th Cir. 1991) (suggesting that no enforceable right prevents a court from ignoring local rules in an effort to steer a case to a given judge).

[5] The ability to refile is consistent with the well-established principle that the double jeopardy provisions of the United States and Wyoming Constitutions do "not attach in the case of a jury trial until a jury is empaneled and sworn." *Richmond v. State*, 554 P.2d 1217, 1222 (Wyo. 1976).

[¶25] We adopt a similar rule in this case. The prosecutor may dismiss and refile, absent evidence that the prosecutor's motive is to harass the defendant, or to impermissibly judge-shop to obtain a different result. We do not condone the prosecutor's actions in this case. However, we do not find evidence to support Mr. Anderson's contention that "[t]he asserted motive for the judicial manipulation is that it was in retribution for an unwanted evidentiary ruling and motivated to deprive Mr. Anderson of a fair trial." Although it is true that the prosecutor did not swear Judge James off the case until after she had ruled on the motion to suppress, the prosecutor first sought a continuance, which was denied. The prosecutor only dismissed and refiled the case when faced with a trial date at which she would be unable to present key witnesses. After the case was refiled, the prosecutor exercised her right under the (now repealed) peremptory challenge rule. Without evidence that her motive was to harass the defendant or to impermissibly judge-shop to get a different result, we find no constitutional error in this case.

## II. *Was the jury correctly instructed regarding venue?*

[¶26] The trial court instructed the jury, in Instruction 13, that an element of the charged crime was that it took place in Sweetwater County.[6] In accordance with article 1, section 10 of the Wyoming Constitution[7] and Wyo. Stat. Ann. § 1-7-102 (LexisNexis 2013),[8] the trial court also instructed that venue could be established as follows:

> When the location of the offense cannot be established with certainty, then an offense may be prosecuted in any county where the essential facts comprising the crime are discovered, or in any county in which the alleged victim was transported. For purposes of these instructions, when the location of the

---

[6] Although Mr. Anderson raises a question whether venue must be proven beyond a reasonable doubt or by some other standard, we need not answer that question here. The trial court instructed the jury, in Instruction No., 7, that "every material and necessary element to constitute such crime must be proved beyond a reasonable doubt," and venue was listed as an element in Instruction No. 13. "Instructions must be considered as a whole[.]" *Giles v. State*, 2004 WY 101, ¶ 14, 96 P.3d 1027, 1031 (Wyo. 2004). The jury was instructed that venue must be proved beyond a reasonable doubt.

[7] Article 1, section 10 of the Wyoming Constitution provides in part, "[w]hen the location of the offense cannot be established with certainty, venue may be placed in the county or district where the corpus delicti [delicti] is found, or in any county or district in which the victim was transported."

[8] Wyo. Stat. Ann. § 1-7-102 provides:

> (a) Every criminal case shall be tried in the county in which the indictment or offense charged is found, except as otherwise provided by law.
> (b) When the location of a criminal offense cannot be established with certainty, venue may be placed in the county or district where the corpus delicti is found, or in any county or district in which the victim is transported.

9

offense cannot be established with certainty, an offense takes place in Sweetwater County if the essential facts comprising the crime are discovered in Sweetwater County or if B.P. was transported through Sweetwater County.

[¶27] Mr. Anderson objected to this instruction prior to it being provided to the jury, stating: "I'm still going to object. I think that a special verdict form or a special question to the jury with an explicit finding [on venue] would probably be a preferable way . . . ."

[¶28]    We will not find reversible error in a trial court's instructions to the jury unless the instructions do not correctly state the law, or the instructions, taken as a whole, do not sufficiently cover the issues presented at trial. A trial court has wide latitude, within those parameters, to choose jury instructions tailored to the facts and legal theories of the case.

*Ewing v. State*, 2007 WY 78, ¶ 8, 157 P.3d 943, 945 (Wyo. 2007) (internal citations omitted).

[¶29] The challenged instruction correctly states the law as set forth in *Merchant v. State*, 4 P.3d 184, 192 (Wyo. 2000), where we said:

[V]enue in criminal cases can be invoked in either the location where the offense is committed or where the *corpus delicti* is found. Wyo. Stat. Ann. § 1-7-102 (Lexis 1999). If the location of the crime cannot be established with certainty, it is constitutionally permissible to place venue in the location where the essential facts comprising the crime are discovered.

[¶30] We find the jury instructions given correctly state the law and cover the issues presented at trial.

### III.   Did the evidence establish that venue in Sweetwater County was proper?

[¶31]  In both his motion and renewed motion for judgment of acquittal, Mr. Anderson contended that the State failed to present evidence that the offense occurred in Sweetwater County. We review the denial of a motion for judgment of acquittal applying the same standard as the district court. We are required to determine, as a matter of law, whether there is sufficient evidence to sustain the charge. *Montez v. State*, 2009 WY 17, ¶ 18, 201 P.3d 434, 440 (Wyo. 2009).

[T]he district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate

inferences to be drawn from that evidence. If a prima facie case is demonstrated when the evidence is so examined, the motion for judgment of acquittal properly is denied. It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. Such a result is indicated if the evidence requires the jury to speculate or conjecture as to the defendant's guilt or if a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime when the evidence is viewed in the light most favorable to the State.

*Craft v. State*, 2012 WY 166, ¶ 13, 291 P.3d 306, 310 (Wyo. 2012) (quoting *Taylor v. State*, 2011 WY 18, ¶ 10, 246 P.3d 596, 599 (Wyo. 2011)) (internal citations omitted).

[¶32] Mr. Anderson's argument is based on the misconception that there is only one way to establish venue in Sweetwater County. As the jury was instructed, there are several avenues for establishing venue. First, venue is established if the location of the criminal act can be established, with certainty, in Sweetwater County. Wyo. Const. art. 1, § 10; Wyo. Stat. Ann. § 1-7-102. If the location cannot be established with certainty, venue can be confirmed either if the essential facts comprising the crime are discovered in Sweetwater County, or if the victim was transported through Sweetwater County in relation to the crime. *Id.*

[¶33] The district court found that "this case [was] a crime on wheels," and the Information adequately informed Mr. Anderson "of the 'location' of the charge against which he had to defend; on the bus, between Laramie and Rock Springs." We agree. There is conflicting evidence on where the offense occurred. The location of the offense could not be established with certainty, and therefore the predicate requirement for considering alternative avenues for establishing venue is met. Thus, the jury could place venue either in the county where the "corpus delicti [was] found" (where B.P. realized the unlawful touching had occurred), or in any county in which B.P. was transported in relation to the crime. Wyo. Const. art. 1, § 10; Wyo. Stat. Ann. § 1-7-102.

[¶34] Mr. Anderson cites *Solis v. State*, 2013 WY 152, 315 P.3d 622 (Wyo. 2013), to support his argument that the jury should have been provided special interrogatories so that it could indicate which of the alternative theories of venue it had found. In *Solis*, the defendant was convicted of two crimes of sexual assault arising from a single act. *Id.* at ¶ 1, at 625. The Court held it was error for the trial court to allow "two convictions to stand when they resulted from disjunctive charges brought under the same statute." *Id.* at ¶ 77, at 639. In the instant case, there is no double jeopardy issue implicated. Instead, the trial court informed the jury that, where the location of the offense could not be established with certainty, there were alternative methods of establishing venue. This

resulted in the jury finding Mr. Anderson was guilty of a single charge, not two charges as in the case of Mr. Solis.

[¶35] Mr. Anderson's reliance on *Tanner v. State*, 2002 WY 170, ¶ 15, 57 P.3d 1242, 1246 (Wyo. 2002), is misplaced for similar reasons. In *Tanner*, this Court reversed a burglary conviction because there, the trial court instructed the jury that one of the elements was that the defendant acted with "intent to commit larceny or a felony therein." *Id.* at ¶ 9, at 1245. The verdict form did not indicate whether the jury relied upon larceny or felony in reaching its verdict. This Court held that the "burglary conviction will stand only if evidence in the record establishes that he had the intent to commit both a felony and the crime of larceny." *Id.* at ¶ 13, at 1246. Because the record proved insufficient to support a felony conviction for burglary with intent to commit a felony, this Court reversed Mr. Tanner's conviction. *Id.* at ¶¶ 16, 17, at 1247.

[¶36] We distinguished *Tanner* in *Miller v. State*, 2006 WY 17, 127 P.3d 793 (Wyo. 2006), where we rejected the appellant's argument that the definition of "deliver" as "actual, constructive, or attempted transfer from one person to another of a controlled substance" implicated the "principles espoused in *Bush v. State*, 908 P.2d 963 (Wyo. 1995) and its progeny [including *Tanner*]." We explained that, unlike the alternative elements instructions in *Tanner* and *Bush,* the challenged instruction in *Miller* "merely defined the term 'deliver' and did not have the effect of charging an alternative ground for conviction." *Miller*, 2006 WY 17, ¶ 26, 127 P.3d at 800.

[¶37] In this case, the trial court instructed the jury that an element of the crime charged was that it occurred in Sweetwater County. The trial court further instructed that, if the location of the offense could not be established with certainty, there were two alternative methods for finding venue. The jury was required to determine if venue was established by one of two alternatives (if venue could not be established with certainty). The instruction only provided different avenues for arriving at the venue determination; it "did not have the effect of charging an alternate ground for conviction." *Miller*, 2006 WY 17, ¶ 26, 127 P.3d at 800. We find as a matter of law that there was sufficient evidence to sustain the venue element of the charge.

### IV. Did the prosecutor's misstatement of the law regarding venue in her closing argument constitute reversible error?

[¶38] The prosecutor explained at closing that "when it's discovered, that's when it's investigated, and that's why it can be prosecuted here and why you can find him guilty in Sweetwater County." The State concedes that this was a misstatement of the law. "Discovery" under article 1, section 10 of the Wyoming Constitution and Wyo. Stat. Ann. § 1-7-102, as applied in this case, is at the time and place that B.P. became aware of the essential facts comprising the crime; it is not the time and place that it was investigated.

12

[¶39] Even unintentional misstatements of the law are misconduct by a prosecutor. *Hernandez v. State*, 2007 WY 105, ¶¶ 32-34, 162 P.3d 472, 480-81 (Wyo. 2007). This Court reviews prosecutorial misconduct in the context of the entire record and the argument as a whole. *Drennen v. State*, 2013 WY 118, ¶ 10, 311 P.3d 116, 121 (Wyo. 2013); *Evenson v. State*, 2008 WY 24, ¶ 7, 177 P.3d 819, 823 (Wyo. 2008).

[¶40] Mr. Anderson did not object to the prosecutor's statements at closing, and we therefore review his allegations of prosecutorial misconduct for plain error. *Ortiz v. State*, 2014 WY 60, ¶ 104, --- P.3d ---, --- (Wyo. 2014). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Sweet v. State*, 2010 WY 87, ¶ 22, 234 P.3d 1193, 1202 (Wyo. 2010) (quoting *Screibvogel v. State*, 2010 WY 45, ¶ 19, 228 P.3d 874, 882 (Wyo. 2010)). "Reversal as a result of prosecutorial misconduct is not warranted unless a reasonable probability exists that absent the error the defendant may have enjoyed a more favorable verdict." *Ortiz*, 2014 WY 60, at ¶ 104, --- P.3d at ---.

[¶41] Here, there is no reasonable possibility that the verdict might have been more favorable to Mr. Anderson if the error had never occurred. As he concedes, the other method for establishing venue, when it cannot be determined with certainty, is where "the victim was traveling on a trip by car, train, etc., that went into Sweetwater County." When the offense occurred, the victim was traveling on a bus that went into Sweetwater County. There is no dispute the "transported" alternative for finding venue is applicable to the facts of this case, and there is little possibility the verdict would have been more favorable to Mr. Anderson if the error had never occurred. The prosecutor's error was harmless.

## CONCLUSION

[¶42] Although we do not excuse the type of conduct engaged in by the prosecutor in this case, we find no reversible error, and we affirm.

13