PEOPLE v MISSIAS

Docket No. 44237. Submitted April 7, 1981, at Grand Rapids.—Decided May 20, 1981.

Stephen N. Missias was convicted by a jury in Kalamazoo Circuit Court of first-degree murder and assault with intent to murder. He was sentenced, Charles H. Mullen, J. Defendant appeals, contending that the trial court abused its discretion by allowing a prior statement made by a prosecution witness to be read to the jury under an exception to the hearsay rule for past recollection recorded and that the admission of a witness's identification of defendant should have been excluded as tainted by an impermissibly suggestive identification at the preliminary examination. *Held:*

1. The prosecution showed that the witness's memory was insufficient to allow him to testify fully and accurately and demonstrated that the document pertained to matters which were once within the witness's knowledge and that the document examined by the witness was found to reflect accurately his knowledge when the conversation with the defendant was fresh in his mind. The memorandum was properly read to the jury under the evidence rule for past recollection recorded.

2. Where defense counsel is present at an identification procedure, it is incumbent on him to demonstrate that the procedure was so impermissibly suggestive as to result in irreparable mistaken identification. Defense counsel in this case neither objected to the identification procedure either at trial or at the preliminary examination nor did he request a lineup. Thus, the issue has not been preserved for appellate review.

Affirmed.

1. EVIDENCE — PAST RECOLLECTION RECORDED — RULES OF EVIDENCE.

The rules of evidence do not require a showing that a witness be

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 372, 877.

30 Am Jur 2d, Evidence § 1081.

Admissibility of statement under Rule 803(5) of Federal Rules of Evidence, providing for recorded-recollection exception to hearsay rule. 35 ALR Fed 605.

[2] 21 Am Jur 2d, Criminal Law §§ 321, 368.

totally unable to recall the contents of a memorandum in order that the memorandum be admissible under the past recollection recorded exception to the hearsay rule; all that is required is that the witness be shown to have insufficient recollection to enable him to testify fully and accurately (MRE 803.5).

2. CRIMINAL LAW — PRETRIAL IDENTIFICATION.

A defense counsel who is present at an allegedly impermissibly suggestive identification proceeding has a duty to object thereto and to demonstrate that the proceeding is so impermissibly suggestive as to result in irreparable mistaken identification.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Karen L. Reynolds*, Assistant Prosecuting Attorney, for the people.

*John V. Dughie*, for defendant on appeal.

Before: MacKenzie, P.J., and V. J. Brennan and M. F. Cavanagh, JJ.

Per Curiam. On December 5, 1978, defendant was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548, and assault with intent to murder, MCL 750.83; MSA 28.278. He was sentenced to two concurrent terms of life imprisonment and appeals as of right.

Both crimes resulted from an incident outside of an entrance of the Club Zorba, a nightclub in Kalamazoo, in the early morning hours of March 8, 1978. Larry Martin, testifying under a grant of immunity by the prosecution, stated that he had been drinking with Chris Champion[1] on March 7, 1978. After dinner, at approximately 7 p.m., the two drove to Big Daddy's nightclub where they met defendant and several other friends. Around 9

---

[1] As a result of this incident, Chris Champion was convicted of second-degree murder on September 1, 1978. His conviction and life sentence were affirmed, *People v Champion*, 97 Mich App 25; 293 NW2d 715 (1980).

p.m., Champion, Martin, defendant, and Karl and Mark Waber drove in Champion's car to the Club Zorba where defendant's ex-girlfriend, Karen "Katie" Taylor, was working as a go-go dancer.

Martin testified that the five remained at the Club Zorba about one and one-half hours, during which time defendant asked him for a gun. Martin told defendant that he probably could not get one. Then Martin saw defendant talking to Champion. Shortly thereafter, the five left, dropping the Wabers off at Big Daddy's. Martin testified that Champion then drove defendant and himself to Champion's parents' home in Galesburg. Martin stayed in the car while defendant and Champion went in. He remembered hearing the hatchback close when the two returned. Next, the three went to Champion's residence where Martin saw the shotgun for the first time in Champion's kitchen. Defendant was wiping it off and then took it outside and test-fired it. Martin testified that the three proceeded back to the Club Zorba in Champion's car and that defendant mentioned something about scaring Katie Taylor. When the three arrived, they played pool and had several more drinks, remaining until shortly before closing time. Katie Taylor was working that night and defendant talked to her a couple of times.

Martin remembered seeing several green shotgun shells. He also stated that Champion had given defendant some surgical gloves when they were at Champion's house.

Around 1 a.m., Martin said, he and Champion returned to the latter's car. Martin testified that he fell asleep or passed out in the back seat. Defendant was still inside the Club Zorba. Martin awoke when Champion said "There's Steve", and the car began to move. Martin, still lying across

the back seat, then felt someone reach over him into the back of the car and saw defendant with the gun. The car was parked near the parking ramp of the club and eventually Champion, the driver, pulled up to the front of the club. Martin testified that defendant said, "There's Katie's taxi", and that if he didn't get her there, he'd follow her to her apartment. Then Martin said he heard two shots and felt the car pull away. He had seen the shotgun barrel sticking out of the passenger window where defendant had been sitting. He also heard defendant say that he "shot the wrong fucking bitch". The three then returned to Champion's house and Martin said he later disposed of four spent shotgun shells.

Defense counsel attacked this testimony by showing that Martin had consumed at least three gin and tonics, nine beers, part of a pint of peppermint Schnapps, and a marijuana cigaret between noon on March 7, 1978, and the murder at 2 a.m. on March 8. On cross-examination, Martin testified that he was not really sure whether Champion or defendant fired the two shots or where the car was parked at the time.

Katie Taylor testified that defendant had previously threatened to kill her. Leaving work on March 8, 1978, at 2 a.m., she was about to enter a taxi when she saw the barrel of a shotgun aimed at her from out of the window of a silver sports car and defendant's eyes looking down the barrel. Taylor said she began to run back in the bar when she heard three shots. Patricia Williams, a bystander unknown to Taylor, was hit and died as the result of her gunshot wounds.

Other evidence included the testimony of the club's doorman who stated that defendant told him not to walk Katie to the cab that night. Several

acquaintances of defendant testified that defendant had previously threatened to kill Katie. Defense counsel presented no additional evidence or witnesses but argued that Chris Champion was the murderer.

The first question is whether the trial judge abused his discretion in allowing the prior statement of prosecution witness Tobin Djerf, written down by a police officer, to be read to the jury under an exception to the hearsay rule for past recollection recorded. MRE 803(5). The statement contained Djerf's admission that he drove defendant to the airport between February 26 and March 4, 1978, and gave defendant $300 to go to Kentucky to look for a job. After subsequently hearing about the murder from Katie Taylor and news broadcasts, Djerf contacted defendant by telephone in Kentucky. The statement indicated that during their conversation, defendant first claimed he had been in Texas. Djerf said that when he told defendant he knew defendant had shot a girl in Kalamazoo, defendant admitted that he had shot a black girl while attempting to shoot Katie because Katie saw him and pushed the black girl in the way. Djerf's statement indicated that defendant said he had used a double barreled sawed-off shotgun and that Red [Martin] and Chris had been with him.

MRE 803(5) provides for an exception to the hearsay rule, whether the declarant is available or not, for a recorded recollection if the following criteria are met:

"A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory

and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party".

Defendant argues that the trial judge erred in allowing the memorandum to be read into evidence under MRE 803(5) because a review of the statement under MRE 612 would have refreshed the witness's memory and it was not shown that the witness was totally unable to refresh his recollection from the recorded statement.

MRE 803(5) does not require a showing that the witness was totally unable to recall the memorandum's contents, but only that the witness "now has insufficient recollection to enable him to testify fully and accurately". This change is reflected in the Committee Note to MRE 803 construing its impact on prior Michigan law:

"Exception 803(5). MRE 803(5) is generally consistent with prior Michigan law. *Jaxon v Detroit,* 379 Mich 405; 151 NW2d 813 (1967); *People v Brassell,* 64 Mich App 445; 236 NW2d 99 (1975); however, one of the foundational requirements for admission as past recollection recorded was that the witness have exhausted his or her memory on the subject. MRE 803(5) permits admission of a memorandum or record of past recollection recorded on a showing that the witness 'now has insufficient recollection to enable him to testify fully and accurately.' To this extent MRE 803(5) is inconsistent with prior Michigan law". Honigman & Hawkins, Michigan Court Rules Annotated (Evidence Rules Supp), p 675.

The record below reveals that Tobin Djerf remembered having the conversation with defendant, that defendant had said he had been in Kalamazoo and that a black girl had gotten shot

when she got in the way of another girl. Mr. Djerf also recalled that defendant said he used a sawed-off shotgun. However, Mr. Djerf, even after reading the statement to himself to refresh his memory, could not remember specifically how Patricia Williams had gotten shot. Nor could be remember specifically the conversation between defendant and himself. We conclude that the prosecution showed that the witness's memory was insufficient to allow him to testify fully and accurately. See *United States v Williams,* 571 F2d 344, 349 (CA 6, 1978), for a similar factual situation analyzed under the identical Federal rule, FRE 803(5).

We further find that the prosecution demonstrated that the document pertained to matters which were once within the witness's knowledge and that the document examined by the witness was found to reflect accurately his knowledge when the conversation was fresh in his mind. See *People v Kubasiak,* 98 Mich App 529, 536-537; 296 NW2d 298 (1980). Thus, the memorandum was properly read to the jury under the rule.

Next, defendant argues that the admission of a witness's identification of defendant should have been excluded as tainted by his impermissibly suggestive identification at the preliminary examination. Where defense counsel is present at the identification procedure, it is incumbent on him to demonstrate that it was so impermissibly suggestive as to result in irreparable mistaken identification. *People v Rivera,* 61 Mich App 427, 431; 232 NW2d 727 (1975). At both the preliminary examination and trial, the witness, Daniel Reiss, testified that at 1:40 a.m. on March 8, 1978, he observed a passenger in a silver Toyota with both hands on a shotgun. Although it was fairly dark and Reiss was about 15 feet away, he got a good look at the

man, whom he identified as defendant. No lineup or photographic showup was held. At the preliminary examination, defendant was dressed in jail clothes and sitting at the defense table behind a sign labeled "Defendant". Defense counsel did not object to the identification procedure either a trial or at the preliminary examination. Nor did he request a lineup. As such, this issue has not been preserved for appellate review. *People v Moss,* 397 Mich 69; 243 NW2d 254 (1976), *People v Wilson (On Rehearing),* 96 Mich App 792, 797; 293 NW2d 710 (1980), *People v Mann,* 89 Mich App 511; 280 NW2d 577 (1979).

Affirmed.