PEOPLE v STARLARD

Docket No. 80312. Submitted February 12, 1986, at Lansing. Decided July 8, 1986. Leave to appeal applied for.

Defendant, Clifford W. Starlard, was convicted of armed robbery following a jury trial in the Ingham Circuit Court. The trial court, Robert Holmes Bell, J., sentenced defendant to from five to twenty years imprisonment. Defendant appeals. *Held:*

1. The Court of Appeals determined that manifest injustice would not result from its refusal to reverse or remand for an evidentiary hearing on the defendant's claim that the in-court identification of the defendant by the complainant was tainted by an impermissibly suggestive confrontation at the preliminary examination.

2. There was no evidence of judge-shopping as a result of the holding of a second preliminary examination. New evidence was presented therein. Defendant's allegation that the complainant's testimony at the second preliminary examination was coached finds no support in the record.

3. The April 30, 1986, United States Supreme Court decision in *Batson v Kentucky,* which held that the peremptory challenge of all members of a defendant's race, on the basis of race, is a denial of equal protection, should be given only prospective application. Thus, the Court of Appeals declined to reverse on the basis of defendant's claim that he, a black man, was denied his Sixth Amendment right to trial by jury when the prosecutor peremptorily challenged the only two blacks on the petit jury during voir dire.

Affirmed.

REFERENCES

Am Jur 2d, Appeal and Error §§ 736 *et seq.*

Am Jur 2d, Constitutional Law §§ 735 *et seq.,* 820.

Am Jur 2d, Courts §§ 231 *et seq.*

Am Jur 2d, Criminal Law § 411.

What constitutes such discriminatory prosecution or enforcement of laws as to provide valid defense in state criminal proceedings. 95 ALR3d 280.

See also the annotations in the ALR3d/4th Quick Index under Constitutional Law.

1. CRIMINAL LAW — IDENTIFICATION — APPEAL.

   The Court of Appeals will not reverse or remand for an evidentiary hearing on a defendant's claim that the in-court identification by the complainant was tainted by an impermissibly suggestive confrontation at the preliminary examination unless fundamental injustice would otherwise result where defense counsel failed to object to the identification procedure at the preliminary examination and at trial and failed to request a lineup.

2. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — DUE PROCESS.

   The subjecting of a defendant to repeated preliminary examinations violates due process if the prosecutor attempts to harass the defendant or engage in "judge-shopping"; unless the prosecutor presents new evidence, a second preliminary examination constitutes harassment violative of due process.

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — JURY TRIALS — CRIMINAL LAW — PEREMPTORY CHALLENGES — RACE.

   The United States Supreme Court decision in *Batson v Kentucky* holding that the peremptory challenge of all members of a defendant's race, on the basis of race, is a denial of equal protection is to be given prospective application and applied only to cases tried subsequent to its release on April 30, 1986.

4. COURTS — RULES — RETROACTIVITY — PROSPECTIVITY.

   The criteria guiding the resolution of the question of whether a court decision which provides new standards is to be given retroactive, limited retroactive, or prospective application implicates: (1) the purpose to be served by the new standards, (2) the extent of the reliance by law enforcement officials on the old standards, and (3) the effect on the administration of justice of retroactive application of the new standards.

5. COURTS — RULES — RETROACTIVITY — PROSPECTIVITY.

   It is proper, in determining whether to give retroactive, limited retroactive, or prospective application to the United States Supreme Court decision in *Batson v Kentucky*, (1986), holding that the peremptory challenge of all members of a defendant's race, on the basis of race, is a denial of equal protection, to weigh the considerations used in resolving the retroactive-prospective application question against the effect that the new rule has on the reliability of the fact-finding process at trial.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Peter D. Houk*, Prose-

cuting Attorney, and *Robert B. Ebersole,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Karla K. Goodman*), for defendant on appeal.

Before: R. B. BURNS, P.J., and BRONSON and J. C. TIMMS,* JJ.

PER CURIAM. Defendant appeals from his conviction of armed robbery, MCL 750.529; MSA 28.797, following a jury trial. He was sentenced to from five to twenty years imprisonment. He appeals as of right, alleging three grounds for reversal. We affirm.

Defendant first claims that the in-court identification by the complainant, Matthias Schueller, was tainted by an impermissibly suggestive confrontation at the preliminary examination. See *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), rev'g 47 Mich App 208; 209 NW2d 257 (1973). However, defense counsel failed to object to this identification procedure at the preliminary examination and at trial and failed to request a lineup. Therefore, we will not reverse or remand for an evidentiary hearing unless fundamental injustice would otherwise result. *People v Missias,* 106 Mich App 549, 555-556; 308 NW2d 278 (1981). We are convinced that no manifest injustice would result here.

First, defendant fit the physical description which Schueller provided to the police and, at the time of his arrest, was wearing the clothing described by Schueller. Schueller observed defendant for two to three minutes as the robbery occurred. Schueller got the license number of the vehicle defendant drove away in and defendant was seen

* Circuit judge, sitting on the Court of Appeals by assignment.

opening the trunk of that vehicle shortly before his apprehension. In the totality of these circumstances, we find that we need not consider whether this identification, by itself, was so unduly suggestive that a remand is required as a matter of law. *Missias, supra.* The fact that Schueller did not describe the robber as being bearded when he initially described the robber to the police does not mandate a contrary result.

Defendant claims that he was denied due process when he was subjected to a second preliminary examination at which, according to defendant, Schueller's testimony was "coached." Subjecting a defendant to repeated preliminary examinations violates due process if the prosecutor attempts to harass the defendant or engage in "judge-shopping." *People v Vargo,* 139 Mich App 573, 578; 362 NW2d 840 (1984); *People v George,* 114 Mich App 204, 211-214; 318 NW2d 666, lv den 414 Mich 931 (1982). Unless the prosecutor presents new evidence, a second preliminary examination constitutes harassment violative of due process. *Vargo, supra,* p 578.

There was no "judge-shopping" here. Further, new evidence was presented at the second preliminary examination, namely, the testimony of Officer Underhill, the officer who arrested defendant based on Schueller's description of the robber, the license number of the robber's vehicle as reported by Schueller, and the defendant's flight upon seeing the officers.

Defendant's allegation that Schueller's testimony was coached finds no support in the record. At the conclusion of Schueller's testimony, the examining magistrate examined Schueller extensively concerning why his testimony concerning the robber's facial hair had changed since the first preliminary examination. The magistrate ap-

peared to be satisfied that the testimony was not coached. So are we.

Finally, defendant claims that he was denied his Sixth Amendment right to trial by jury when the prosecutor peremptorily challenged the only two blacks on the petit jury during voir dire. Defendant properly preserved this issue by objecting to the prosecutor's challenge of the blacks on the jury.

The United States Supreme Court has recently held that the peremptory challenge of all members of a defendant's race, on the basis of race, is a denial of equal protection. *Batson v Kentucky,* 476 US —; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

In reviewing this issue, this Court must first determine if *Batson* is to be given retroactive, limited retroactive, or prospective application. We conclude that it is properly given only prospective application, i.e., shall be applied only to cases tried subsequent to its release.

The criteria guiding resolution of the question implicates: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement officials on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards. *Stovall v Denno,* 388 US 293, 297; 87 S Ct 1967; 18 L Ed 2d 1199 (1967).

*Batson* fashions a jury selection rule designed to: (1) prevent the arbitrary ouster of fairminded and impartial jurors who might protect a defendant from the caprice of government of the majority, (2) assure members of all races the privilege of sitting on a jury unhindered by arbitrary elimination, and (3) assure public confidence in the fairness of our system of justice.

The reliance of prosecutors and trial courts on the previously unfettered right to use peremptory

challenges without explanation was great, in light of the United States Supreme Court holding in *Swain v Alabama*, 380 US 202; 85 S Ct 824; 13 L Ed 2d 759 (1965) (no equal protection violation) and the Michigan Supreme Court holding in *People v Roxborough*, 307 Mich 575, 594; 12 NW2d 466 (1943), cert den 323 US 749; 65 S Ct 80; 89 L Ed 600 (1944).

A retroactive application of the *Batson* rule would require review of a multitude of convictions. Even limited retroactive application, i.e., to those appeals pending when *Batson* was decided, would require new trials or, at the least, evidentiary hearings in each appeal where the issue has been preserved.

None of the above considerations favors even limited retroactive application of *Batson.* However, before our analysis is complete, those considerations should properly be weighed against the effect that the *Batson* rule has on the reliability of the fact-finding process at trial. *Denno, supra.* While we believe that the holding in *Batson* is laudable and necessary for the reasons stated by the Supreme Court, we believe that the *Batson* rule has at best an uncertain effect on the fact-finding process. In balance, we believe that *Batson v Kentucky* should be given only prospective application. Accordingly, we decline to reverse on the basis of defendant's last claim of error.

Affirmed.