*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LADARRIUS SHAQUOR WOODS,

        Defendant-Appellant.

UNPUBLISHED
December 19, 2019

No. 344313
Jackson Circuit Court
LC No. 16-005177-FC

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 8 to 20 years' imprisonment for the AWIM conviction, 3 to 5 years' imprisonment for the CCW conviction, and 2 years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises from the shooting of the victim, Justin Ewing-Brown. On the day of the shooting, the victim was at the apartment of his girlfriend, Brittany Wilks, with the couple's two children, along with the victim's friend, Kalinn Williams. In the afternoon, another friend, Dondre Curry, arrived at the apartment to pick up his television. The victim and Curry became embroiled in an argument regarding the television, which evolved into a physical altercation that quickly ended in the victim's favor. From inside the apartment, Curry proceeded to place a phone call to defendant, his nephew. Curry was upset about the fight and threatened the victim and the victim's family while he was on the phone with defendant. The victim told Curry to leave, and Curry exited the apartment with the television. Shortly thereafter, defendant arrived at the apartment. The victim and defendant talked about the fight that had transpired between Curry and the victim. Defendant, who had a gun in the pocket of his jacket, shot the victim through the jacket. The victim was struck by a bullet in his upper right leg, near the groin. The victim never saw the firearm. Defendant left the apartment, and Wilks, who had been in a

-1-

bedroom, came out and called the police. Defendant was arrested later that evening while he was working at a local gas station. At trial, defendant admitted that he shot the victim, but he maintained that the shooting was an accident.

Defendant and Curry were both criminally charged, they participated in separate preliminary examinations; their cases were later consolidated; they were tried jointly before a single jury; the charges against Curry were dismissed on his motion for directed verdict, and defendant was convicted as indicated above. The victim, who testified at both preliminary examinations, did not testify at the joint trial, and there is no dispute that he was "unavailable" for trial. The trial court allowed the admission of the victim's testimony at the two preliminary examinations.

## II. ANALYSIS

### A. ARGUMENTS UNDER THE CONFRONTATION CLAUSE AND MRE 804(b)(1)

On appeal, defendant first argues that the trial court erred by admitting the victim's testimony from the two preliminary examinations. Defendant contends that the evidence violated the Confrontation Clause and was contrary to MRE 804(b)(1), which provides a hearsay exception for former testimony by a declarant when the declarant is unavailable. Defendant also maintains that the trial court erred and violated the Confrontation Clause by admitting a testimonial hearsay statement made by Wilks to a police officer, which was not made during an ongoing emergency.

We review for an abuse of discretion a trial court's decision to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). This Court reviews de novo the question whether a defendant was denied the constitutional right to confront complaining witnesses. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

### 1. GENERAL PRINCIPLES

Under the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. Similarly, under the Michigan Constitution, "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker (On Remand)*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006), citing *Crawford v Washington*, 541 US 36, 59, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004) ("Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior

opportunity for cross-examination."). The Confrontation Clause of the Sixth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Tennessee v Lane*, 541 US 509, 523; 124 S Ct 1978; 158 L Ed 2d 820 (2004).

In *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012), our Supreme Court observed:

> The Confrontation Clause is primarily a functional right in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials. Functioning in this manner, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.

> The specific protections the Confrontation Clause provides apply only to statements used as substantive evidence. In particular, one of the core protections of the Confrontation Clause concerns hearsay evidence that is "testimonial" in nature. The United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause; thus, out-of-court testimonial statements are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant. [Citations and quotation marks omitted.]

Testimony given at a preliminary examination constitutes evidence that is testimonial in nature. *Crawford*, 541 US at 68; *Nunley*, 491 Mich at 698-699. The United States Supreme Court has recognized that while a preliminary examination "is ordinarily a less searching exploration into the merits of a case than a trial," the Confrontation Clause can be satisfied if a defendant's cross-examination of the witness at the preliminary examination was not significantly limited in scope or nature and the witness was actually unavailable at trial. *California v Green*, 399 US 149, 166; 90 S Ct 1930; 26 L Ed 2d 489 (1970). "[P]rior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." *Crawford*, 541 US at 57. The constitutional right of confrontation solely guarantees an opportunity for effective cross-examination, not cross-examination that is effective to whatever extent and in whatever way a defendant wishes. *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988). "It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even . . . the very fact that he has a bad memory." *Id.*

Pursuant to MRE 804(b)(1), former testimony given as a witness at another hearing of the same or different proceeding is not inadmissible under the hearsay rule when the witness is unavailable and when "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

## 2. ADMISSION OF VICTIM'S TESTIMONY FROM DEFENDANT'S PRELIMINARY EXAMINATION

Although in his statement of argument defendant asserts that the admission of the victim's testimony from defendant's preliminary examination violated the Confrontation Clause and MRE 804(b)(1), we are having difficulty identifying any substantive supporting argument in the body of his brief. Defendant presents no argument, analysis, or reasoning whatsoever with respect to MRE 804(b)(1). Indeed, this rule of evidence is not even mentioned after being cited in the statement of argument. We thus find any argument based on MRE 804(b)(1) abandoned. See *People v Kammeraad*, 307 Mich App 98, 143; 858 NW2d 490 (2014) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (citation and quotation marks omitted).

With respect to the Confrontation Clause argument, defendant devotes much time discussing United States Supreme Court opinions that addressed the Confrontation Clause and preliminary hearings and examinations, including a dissent written by JUSTICE BRENNAN in *Green*, 399 US at 196-197, which criticized allowing preliminary hearing testimony at trial. Defendant then argues in full:

> In conclusion, the Confrontation Clause requires an adequate cross-examination, not just the mere opportunity for cross-examination. Mr. Woods asked this Court to recognize a rule that cross-examination conducted at a preliminary examination does not satisfy the Confrontation Clause.

We, of course, cannot oblige defendant in his attempt to change the law. We are bound by precedent from our Supreme Court and the United States Supreme Court, which provides that preliminary examination testimony can be presented at trial if the witness is unavailable and there was an adequate *opportunity* for effective cross-examination of the witness at the preliminary examination. *Crawford*, 541 US at 57; *Nunley*, 491 Mich at 698. Defendant fails to argue that such an opportunity did not exist in this case, and the record plainly reveals that he had an opportunity to effectively cross examine the victim at the preliminary examination and that the examination was not significantly limited in scope or nature. Reversal is unwarranted.

### 3. ADMISSION OF VICTIM'S TESTIMONY FROM CURRY'S PRELIMINARY EXAMINATION

Plainly, a potential Confrontation Clause problem arose when the victim's testimony *at Curry's* preliminary examination was admitted into evidence and considered by the jury as to defendant. As noted earlier, there were separate preliminary examinations for defendant and Curry; therefore, defendant necessarily did not have an adequate or any opportunity to cross examine the victim at Curry's preliminary examination.[1] In *People v Bruner II*, 501 Mich 220, 227-228; 912 NW2d 514 (2018), our Supreme Court addressed Confrontation Clause issues in the context of joint trials with a single jury, explaining:

---

[1] Defendant and Curry were represented by separate counsel.

Joint trials with a single jury present a special problem. Some evidence may be admissible as to one defendant but violate a codefendant's confrontation right. When that is the case, a court must either exclude the testimony or take measures to eliminate the confrontation problem. What measures are sufficient depends on the context and content of the evidence. If, for example, a witness's testimony can be redacted to eliminate reference to the codefendant's existence, that witness will not have borne testimony against the codefendant in any Sixth Amendment sense. Sometimes the court can accomplish the same by instructing the jury to consider testimony against one defendant, but not the other. [Citations omitted.]

In *Bruner II*, the Court held that "[t]he defendant had no opportunity to cross-examine the witness, and because the substance of the witness's testimony—the codefendant's confession that implicated the defendant—was so powerfully incriminating, the limiting instruction and redaction were ineffective to cure the Confrontation Clause violation." *Id.* at 223.

In this case, we tend to agree with defendant that there was a Confrontation Clause violation where there were no measures taken to eliminate the confrontation problem.[2] Regardless, assuming that defendant's vague objection to the admission of the victim's testimony from Curry's preliminary examination sufficed for purposes of preservation, we hold that any error was harmless beyond a reasonable doubt. "Harmless error analysis applies to claims concerning Confrontation Clause errors, [b]ut to safeguard the jury trial guarantee, a reviewing court must conduct a thorough examination of the record in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (citation and quotation marks omitted).

The victim's testimony was substantially the same at both preliminary examinations. Defendant argues that the error was not harmless because, in the context of Curry's preliminary examination, the jury heard testimony by the victim regarding the physical altercation between Curry and the victim, which occurred before the shooting and before defendant was even present. This argument suggests that the victim's testimony at defendant's preliminary examination did not cover the argument and physical altercation between the victim and Curry, but this is factually inaccurate, as the victim also testified regarding these matters at *defendant's* preliminary examination. Defendant also contends that the error was not harmless because the jury heard about the threats Curry made to the victim, "both on his own behalf and Mr. Woods' behalf, but outside of the presence of Mr. Woods and without his request or authorization." Once again, the victim also testified at *defendant's* preliminary examination about Curry's threats made in relationship to himself and defendant harming the victim. Reversal is

---

[2] Defendant again presents no argument, analysis, or reasoning whatsoever with respect to MRE 804(b)(1), and this rule of evidence is not mentioned after being cited in the statement of argument. We thus find any argument based on MRE 804(b)(1) abandoned. See *Kammeraad*, 307 Mich App at 143.

unwarranted because any presumed Confrontation Clause infringement was harmless beyond a reasonable doubt where the victim's testimony at Curry's preliminary examination did not deviate in any materially relevant manner from his testimony at defendant's preliminary examination.

## 4. ADMISSION OF STATEMENTS MADE BY WILKS TO POLICE OFFICER

Defendant next argues that the trial court's admission of a police interview with Wilks conducted at the scene and captured on an officer's body camera violated the Confrontation Clause. In *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006), the United States Supreme Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

"The existence of an 'ongoing emergency' at the time of an encounter between an individual and the police is among the most important circumstances informing the 'primary purpose' of an interrogation." *Michigan v Bryant*, 562 US 344, 361; 131 S Ct 1143; 179 L Ed 2d 93 (2011).

Deputy Director Chris Boulter was one of the first officers to arrive at the crime scene. He testified that he was immediately concerned when he arrived at the apartment complex because it was 2:45 p.m. and area schools were releasing students. He swiftly notified nearby schools to go into lockdown because he did not want more students arriving at nearby apartment complexes. At the time, Boulter did not know the identity of the perpetrator or whether that individual was still in the apartment complex. Boulter believed that an ongoing threat existed. After Boulter arrived at the apartment, he spoke to Wilks to determine the identity of the shooter and to assess the circumstances surrounding the shooting. Wilks did not testify at trial, and there is no dispute that she was "unavailable."

The trial court admitted a video taken with the body camera Boulter had been wearing. In the video, Wilks identified defendant as the shooter and provided a physical description of defendant. Boulter put out an alert to locate defendant. Wilks's statements in the video regarding the circumstances of the shooting and the identification and description of defendant were necessary for Boulter to evaluate whether there was a public threat and whether students were endangered. Under these circumstances, we conclude that Boulter was engaged in addressing an ongoing emergency when he questioned Wilks and that the primary purpose of the interrogation was not to establish or prove past events potentially relevant to a later criminal prosecution. Accordingly, Wilks's statements made during the interview were not testimonial in nature; therefore, the Confrontation Clause was not offended. Defendant claims that there was no ongoing emergency when Boulter spoke to Wilks because the shooting was over at that point and medical personnel had already treated the victim. This argument, however, fails to appreciate that the first responders were still present; and while the statements were being made

by Wilks, an officer can be seen holding an IV bag to help in the emergency treatment of the victim. It was an additional three minutes after Wilks made her statements before the victim was even evacuate to an ambulance. Likewise, the defendant was on the loose, his location was unknown, and that the police did not yet know the circumstances of the shooting and could not rule out the possibility that he posed a danger to students and others. Reversal is unwarranted.

## B. ADMISSIBILITY OF VIDEO-RECORDED POLICE INTERVIEW OF WILLIAMS

Defendant next argues that the trial court erred by admitting a video-recorded police interview of Williams, who was present at the apartment when the shooting occurred. Defendant contends that the evidence did not qualify as a recorded recollection under MRE 803(5) and violated defendant's right to due process. There is no dispute that the evidence generally constituted hearsay.

The trial court admitted the video pursuant to the hearsay exception in MRE 803(5), which concerns recorded recollections and provides a hearsay exception for the following types of evidence:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

"MRE 803(5) does not require a showing that the witness was totally unable to recall the memorandum's contents[.]" *People v Missias*, 106 Mich App 549, 554; 308 NW2d 278 (1981).

Here, Williams's testimony regarding his memory of the shooting and subsequent police interview was unclear and contradictory. Williams acknowledged that he was at the apartment with the victim on the day of the shooting. He also indicated that he spoke to police officers about one week after the shooting and agreed that his memory of the incident would have been better during that interview than it would be at trial. Williams testified that he could not recall anything about the shooting. The trial court further inquired into Williams's recollection. Williams claimed that he was confused when he participated in the police interview because it was a stressful time in his life. The prosecution played a redacted version of the video for the jury. In the video, Williams noted his observations at the apartment on the day of the shooting. Specifically, Williams stated that he believed that defendant was going to shoot him after defendant shot the victim; however, the gun jammed, and it was inoperable.

Without being asked a question, Williams volunteered that he could not vouch for the video. He also claimed, in response to cross-examination, that he did not remember the interview or having it recorded. But Williams admitted that it was he in the video. Williams maintained that he looked confused and nervous in the video and that he did not really recognize himself. Williams explained that he suffered from post-traumatic stress disorder as a result of being shot in February 2016. He also asserted that he used medical marijuana.

Regardless of Williams's equivocal testimony, the video-recorded interview met the foundational requirements for admission pursuant to MRE 803(5). First, the interview pertained to the shooting that Williams witnessed. The video itself reflects that Williams once had knowledge regarding the circumstances of the shooting. Again, in his direct examination, Williams agreed that he was with the victim at the apartment on the day of the shooting and that he spoke to police officers about one week after the incident. Moreover, the victim and defendant agreed that Williams was present at the time of the shooting. Second, Williams claimed at trial that he had no recollection of the shooting or of the video. Third, Williams affirmed that indeed he was in the video; therefore, the video consisted of Williams's own recorded statements. Although Williams stated that he could not vouch for the video and that he believed that he looked confused and nervous in the footage, these claims went to the weight of the evidence and not its admissibility. See *People v Daniels*, 192 Mich App 658, 669; 482 NW2d 176 (1991).

Further, defendant argues that the trial court erred by not allowing Williams the opportunity to review the video to see if it refreshed his recollection; however, that is not a requirement for admission under MRE 803(5). See MRE 612 (writing or object used to refresh memory). At any rate, it does not appear that it would have made any difference, considering that Williams watched the video during the trial and later stated that he did not remember the interview. For whatever reason, Williams was plainly a reluctant witness who did not want to inculpate defendant.

The trial court did not abuse its discretion by admitting the video recording of Williams's police interview. Moreover, to the extent that defendant raises a general objection to the video on due process grounds for the first time on appeal, he has not shown plain error affecting his substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Accordingly, defendant is not entitled to relief on due process grounds.

## C. SENTENCING ISSUES

Next, defendant argues that he is entitled to additional jail credit. We need not address this issue because it has become moot. The parties entered into a stipulation, and an amended judgment of sentence was subsequently issued that corrected a mistake with respect to the calculation of jail credit.

Defendant also asserts that the trial court lacked statutory authority to impose the $60 DNA testing fee. Defendant claims that under MCL 28.176(3), a DNA cost assessment cannot be imposed if law enforcement already has an offender's DNA on file. Defendant contends that his DNA sample was on record before this case arose; therefore, the trial court lacked the statutory authority to impose the DNA fee. The right of a trial court to impose costs in a criminal case is based on statutory authorization, which entails a question of statutory interpretation that we review de novo on appeal. *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014).

-8-

Because defendant was arrested for committing felonies, the state was mandated to obtain defendant's DNA identification profile. MCL 28.176(1)(a).[3] And if an individual is ultimately convicted of a felony or certain enumerated misdemeanors, the court must impose a DNA cost assessment of $60. MCL 28.176(5). MCL 28.176(3) provides:

> Notwithstanding subsection (1), if at the time the individual is arrested, convicted of, or found responsible for the violation the investigating law enforcement agency or the department already has a sample from the individual that meets the requirements of this act, the individual is not required to provide another sample or pay the assessment required under subsection (5).

In this case, the felony complaint directed that a sample of defendant's DNA be taken upon his arrest. There appears to be a box in the felony complaint that can be marked or checked if the Michigan State Police had previously obtained a DNA sample from defendant, and the box is unmarked. In defendant's presentence investigation report (PSIR), the probation officer stated, "He has a very limited criminal record; in fact, the current offenses represent his first known contact with the criminal justice system."[4] Following the guilty verdicts, the trial court ordered that defendant provide a DNA sample. The certification, however, was returned by law enforcement stating that defendant's DNA was not obtained because the Department of State Police already had a sample of defendant's DNA. At sentencing, the trial court indicated that defendant would be assessed the $60 DNA fee. This fee was included in the amended judgment of sentence.

The record supports the prosecution's contention that defendant's DNA sample was initially taken upon his arrest for the instant charges pursuant to MCL 28.176(1)(a); however, he was not charged the $60 fee until he was convicted, which was the proper procedure under MCL 28.176(5). We construe MCL 28.176(3) as simply precluding the state from taking a defendant's DNA sample twice or making a defendant pay twice for the cost of DNA testing. Accordingly, we hold that the trial court did not err in assessing a $60 DNA cost.

Finally, defendant argues that the trial court's assessment of court costs pursuant to MCL 769.1k(1)(b)(*iii*) constituted an unconstitutional tax and must be vacated. The same

---

[3] A DNA sample must also be taken if an "individual is convicted of or found responsible for a felony or attempted felony, or any of the following misdemeanors, or local ordinances that are substantially corresponding to the following misdemeanors . . . ." MCL 28.176(1)(b).

[4] The PSIR reveals that when defendant was out on bond in relationship to the instant charges, he committed an assault and battery on January 23, 2017, and pleaded guilty to misdemeanor assault and battery on April 25, 2017, in district court. The PSIR reflects that he was sentenced on the date of the plea to 90 days in jail and that the case was still "open for fines/costs." Defendant's trial in this case was commenced in March 2018. Given that misdemeanor assault and battery is not one of the enumerated misdemeanors in MCL 28.176 that would require collection of a DNA sample and payment of the $60 fee, we conclude that the district court case has no bearing on our analysis.

constitutional argument regarding MCL 769.1k(1)(b)(*iii*) was addressed by this Court in *People v Cameron*, 319 Mich App 215; 900 NW2d 658 (2017). The *Cameron* panel held "that although it imposes a tax, MCL 769.1k(1)(b)(*iii*) is not unconstitutional, and we affirm the trial court's assessment of court costs." *Id.* at 218. This Court is bound by the holding in *Cameron*. See MCR 7.215(J)(1). As a result, defendant has failed to show that the trial court erred in assessing court costs.

We affirm.


/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford